**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **COURTNEY BOYD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **2:07-CV-524-MEF** |
| **SUSANNE BUSH, ET AL.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

## SPECIAL REPORT OF DEPARTMENT OF CORRECTIONS DEFENDANTS

Come now Defendants Richard Allen, Anthony Williams, LaGreta McClain, Joseph Danzey, Matthew Jordan, Kenneth Sconyers, Nathan Lawson, Mary Lee, Gerald Wright, Marcia Scott, Shawn Logan, and Darrell Bell by and through counsel, Troy King, Attorney General of Alabama, to submit this, their Special Report in response to the allegations of the complaint and its amendments.

## PARTIES

1.      Courtney Boyd, Plaintiff, is an inmate in the Easterling Correctional Facility of the Alabama Department of Corrections (ADOC), located in Clio, Alabama.

2.      Richard Allen is currently the Commissioner for the ADOC.

3.      Anthony Williams, Defendant, is employed by ADOC as a Correctional Officer at Easterling Correctional Facility.

4.      LaGreta McClain, Defendant, is employed by ADOC as a Correctional Officer at Easterling Correctional Facility.

5.      Joseph Danzey, Defendant, is employed by ADOC as a Correctional  at Easterling Correctional Facility.

6.      Matthew Jordan, Defendant, is employed by ADOC as a Correctional at Easterling Correctional Facility.

7.      Kenneth Sconyers, Defendant, is employed by ADOC as a Correctional Captain at Easterling Correctional Facility.

8.      Nathan Lawson, Defendant, is employed by ADOC as a Correctional Lieutenant at Easterling Correctional Facility.

9.      Mary Lee, Defendant, is employed by ADOC as a  Correctional Lieutenant at Easterling Correctional Facility.

10.      Gerald Wright, Defendant, is employed by ADOC as a  Correctional  at Easterling Correctional Facility.

11.      Marcia Scott, Defendant, is employed by ADOC as a  Correctional Sergeant  at Easterling Correctional Facility.

12.      Shawn Logan,   Defendant, is employed by ADOC as Segregation Unit Commander at Easterling Correctional Facility.

13.      Darrell Bell, Defendant, is employed by ADOC as a Correctional Officer at Easterling Correctional Facility.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that excessive force was used by officers at Easterling Correctional Facility against him in violation of his rights under the Eighth and Fourteenth Amendments on two occasions, to wit, 23 March 2007 and 7 June 2007.  The Plaintiff alleges that he was forced to lie on a steel cot without the benefit of a mattress

on several occasions in violation of his rights under the Eighth and Fourteenth Amendments. Finally, the Plaintiff alleges that he is not properly classified and that this too violates his rights under the Eighth and Fourteenth Amendments.

The Plaintiff brought this action against the Defendants in their official and individual capacities, seeking compensatory damages and injunctive relief.

## DEFENDANTS' RESPONSE TO ALLEGATIONS

1.     The Plaintiff failed to state a claim upon which relief can be granted pursuant to 42 USC §1983 or any other cause of action.

2.     Defendants assert that Plaintiff has failed to show there is any genuine issue of material fact in this case.

3.     Defendants deny that they violated the Plaintiff's constitutional rights pursuant to the Eighth and Fourteenth Amendments.

4.     Defendants deny all material allegations not expressly admitted herein and demands strict proof thereof.

5.     Defendants assert immunity pursuant to Article 1, Section 14 of the Constitution of Alabama 1901 and the Eleventh Amendment to the United States Constitution.

6.     Defendants assert qualified immunity.

7.     Defendants assert State-Agent discretionary immunity.

8.     Defendants assert immunity pursuant to Ala. Code, 1975, § 6-5-338.

9.     Defendant Richard Allen asserts that the Plaintiff fails to state a claim against him for which relief can be granted. Plaintiff totally failed to make any factual allegations against the Defendant Allen whatsoever beyond merely naming him as a party defendant.

**DEFENDANTS' EXHIBITS**

1.    Defense Exhibit 1 – Affidavit of Mary Lee

2.    Defense Exhibit 2 – Affidavit of Anthony Williams

3.    Defense Exhibit 3 – Affidavit of Marcia Scott

4.    Defense Exhibit 4 – Affidavit of Shawn Logan

5.    Defense Exhibit 5 – Affidavit of Darrell Bell

6.    Defense Exhibit 6 – Affidavit of Joseph Danzey

7.    Defense Exhibit 7 – Affidavit of Gerald Wright

8.    Defense Exhibit 8 – Affidavit of Nathaniel Lawson

9.    Defense Exhibit 9 – Affidavit of LaGreta McClain

10.   Defense Exhibit 10 – Affidavit of Kenneth Sconyers

11.   Defense Exhibit 11 – Affidavit of Willie Bryant

12.   Defense Exhibit 12 – Affidavit of Matthew Jordan

**STATEMENT OF FACTS**

On March 23, 2007, Capt. Kenneth Sconyers instructed Lt. Mary Lee, First Shift Commander, to have Inmate Courtney Boyd placed in the Restricted Privilege Dormitory (C-i) pending investigation for violation of Departmental Rule #41 — Making false statement or charge to a ALDOC Employee with intent to deceive the employee or prejudice another person. Inmate Boyd had attempted to prejudice Nurse Susie Bush's supervisor, Health Service Administrator Kay Wilson, against her by falsely accusing Nurse Bush of making discriminating remarks about him. As reports indicated ( Incident Report ECF-07-307 C, dated 23 March 2007, attached as Exhibit 1 to Sconyers affidavit

which is Defense Exhibit 10), Lt. Lee advised Inmate Boyd of his assignment to the Restricted Privilege Dorm. Inmate Boyd refused orders by both Lt. Lee and Sgt. Marcia Scott to report to Dorm C-l. Lt. Lee and Sgt. Scott then escorted Inmate Boyd to Dorm C-I where he repeatedly refused orders by Lt. Lee and Sgt. Scott to enter the dorm. Dormitory Rovers Bobby Lingo and Anthony Williams, who were present at the time attempted to assist. Officer Lingo placed his hands on Inmate Boyd's right shoulder and arm as he and Lt. Lee and attempted to escort Inmate Boyd into the dorm. Inmate Boyd pulled away from Lt. Lee, turned toward Sgt. Scott with clenched fists, and stated, "Y'all can't make me go in there!" Officer Williams grasped Inmate Boyd's left arm, and he, Officer Lingo, and Lt. Lee placed Inmate Boyd on the floor of Dorm C-l. Inmate Boyd continued to resist as Officer Lingo handcuffed him to the rear. Sgt. Shawn Logan approached Dorm C-i and assisted in escorting Inmate Boyd to the Health Care Unit (All inmates and Officers involved in any use of force routinely receive an immediate medical examination following any use of force). While in transit to the Health Care Unit, Inmate Boyd allegedly fell on the sidewalk. The Health Care Unit was immediately notified, and a Nurse responded to the scene. Inmate Boyd then got up and walked to the Health Care Unit where he was examined by Nurse Deborah Shehane. As indicated on the Medical Report, Inmate Boyd suffered only a slight scrape to his knee as a result of the fall or being forced to the Dorm C- 1 lobby floor. Inmate Boyd was then placed in Administrative Segregation pending additional charges of RV# 56- Failure to obey a direct order of a DOC Official, and RV# 44 — Threats. Lt. Willie Bryant, who was not a participant in the use of force, conducted a Use of Force Investigation. Lt. Bryant concluded that the use of force against Inmate Boyd was justified and that only the

minimal amount of force was used. (Defense Exhibit 10). No officers dragged the Plaintiff across the floor or in any other manner. (Defense Exhibits 1, 2, 3, 4).

On 7 June 2007 at approximately 8:24 PM Officer Darrell Bell observed Inmate Courtney Boyd lying in his assigned cell, B-11, and was unresponsive. Sgt. Gerald Wright was notified of the incident. He instructed Officer LeGreta McClain, the Segration Cubicle Officer, to open cell B-11 and Wright entered the cell to attempt to handcuff Inmate Boyd. The Plaintiff clinched his fists and Sgt. Wright instructed him to raise his hands to be handcuffed. Inmate Boyd raised his head and looked at Sgt. Wright and smiled, at which time Sgt Wright grasped Boyd's left leg and left arm. Wright instructed Bell to grasp Boyd's right leg and right arm. Sgt. Wright and Officer Bell then escorted Inmate Boyd to the Segregation Unit Lobby. Inmate Boyd was smiling while he was being escorted. Lt. Nathan Lawson questioned Inmate Boyd about the incident. Lt. Lawson and Sgt. Wright placed Inmate Boyd I in a chair in the lobby where he was examined by Nurse Valley Hathaway. (Defense Exhibits 5, 8, 9).

Sgt Wright stated in his affidavit, Defense Exhibit 7, that:

> On June 7, 2007, at approximately 8:10 PM, I was summoned to the Segregation Unit. Officer Darrell Bell reported to me that Inmate Courtney Boyd was lying on the floor in Cell 11 un-responsive. At approximately 8:24 PM, Officer Bell and I proceeded to Cell-11. I observed through observation window Inmate Boyd lying on the floor, conscious but un-responsive. Officer Bell and I removed Inmate Torriano Carroll, B'155117, from the cell without incident. Inmate boyd remained on the floor non-compliant. Inmate Boyd continued to be defiant by not responding to any verbal commands. Inmate Boyd was known for having disruptive and defiant behavior. I instructed Inmate Boyd again to raise his hands to be handcuffed. Inmate Boyd raised his head and looked at me, grinned and laid his head back on the floor. Inmate Boyd then clinched his fists and made his body stiff and rigid. I

instructed Officer Bell to place his hands on Inmate Boyd's right leg and right arm. I placed my hands on Inmate Boyd's left leg and left arm and we removed him from the cell and escorted him to the lobby. At approximately 8:26 PM, Lt. Nathaniel Lawson and I placed Inmate Boyd in a chair in the lobby to be examined by Nurse Valley Hathaway. At approximately 9:20 PM, Inmate Boyd was released by Nurse Hathaway and returned to his assigned cell.

Attached as Exhibit 1 to Defense Exhibit 8, the affidavit of Nathaniel Lawson, is a copy of form PHS-MD 7007, Emergency, dated 7 June 2007 which contains the results of the examination of Inmate Boyd by Nurse Hathaway. Among other findings were a bump on the back of his head and a contusion on his left hip. Otherwise, the Plaintiff complained of pain in his left side which radiates down into his left leg as he tried to walk.

Officer Joseph Danzey stated in his affidavit that he had no knowledge of the incident of 7 June 2007 because he was in the Segregation Unit Office at the time of the incident. (Defense Exhibit 6). Officer Matthew Jordan also stated in his affidavit that he had no knowledge of the incident of 7 June 2007. (Defense Exhibit 12).

Regarding the allegation that the Plaintiff was required to lie on a steel bed without a mattress, it is ADOC policy to take up the mattresses in the administrative segregation units during the day time hours. Lt. Willie Bryant is a Correctional Lieutenant at ECF. In his affidavit, Defense Exhibit 11, he states that :

According to our Standard Operating Procedures (SOP) C-30, Page 8 (Exhibit #1) Disciplinary Segregation inmates' mattresses will be removed daily, Monday through Friday, from 6AM to 6PM, except on state holidays. Our SOP is a Long Standard Procedure. I do not have a reason why the mattresses are taken. Inmates are not being forced to lie on the steel bed. They get theft mattress back during evening

> time. thmates in Segregation can sit on theft bed during day
> light time. They do not have to lie on the steel bed.

These Defendants have no knowledge of the classification issue raised by the Plaintiff.

Defendant Richard Allen asserts that the Plaintiff fails to state a claim against him for which relief can be granted. Plaintiff totally failed to make any factual allegations against the Defendant Allen whatsoever beyond merely naming him as a party defendant.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

## ARGUMENT

### 1. Excessive Force

The Plaintiff filed this 42 U.S.C. § 1983 civil action in which alleges that he was physically abused by the Defendant in violation of his constitutional right to be free of cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments of the United States Constitution while incarcerated in the Easterling Correctional Facility of the Alabama Department of Corrections.

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian,* 503 U.S. 1 (191992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley:* whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6. Thus, summary applications of force are constitutionally permissible when prison

security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley,* 475 U.S. at 312 (riot and hostage situation). In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that " '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "

*Id.* at 6-7 (citations omitted)

.With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White,* 813 F.2d 318, 322 (11th Cir.1987). In this case, the

Defendants used no more force than necessary to regain control of the situation when the Plaintiff refused on two occasions to comply with their orders that were given to assert control over the Plaintiff to maintain good order and discipline in the prison. In response to their orders, the Plaintiff was defiant by passively resisting their efforts to assert control over him. It should be noted that the Plaintiff does not allege that any of the officers struck him, beat him or otherwise administered blows to his body but rather he protests that he was dragged across the floor on each occasion. While the Defendants deny dragging the Plaintiff, a cooperative inmate could have avoided this entirely by simply obeying their instructions rather than being insubordinate. Under the circumstances, the officers administered the minimal force necessary to control the Plaintiff and to move him to his destinations..

The reasonableness of the Defendants' actions on both 23 March 2007 and 7 June 2007 is reflected in the results of each of the medical examinations afterwards in which the nurse noted on 23 March 2007 a scrape to the Plaintiff's left knee and on 7 June 2007, a bump on the back of his head and a contusion to his left hip. The Plaintiff did not require any medical treatment as a result of the actions of the Defendants.. "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline." ' *McBride v. Rivers,* 170 Fed.Appx. 648, 656 (11th Cir.2006) (quoting *Williams v. Burton,* 943 F.2d 1572, 1576 (11th Cir.1991)). While this deference "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have

made a considered choice." *Ort,* 813 F.2d at 322 (quoting *Whitley,* 475 U.S. at 322).

Where the only question concerns the reasonableness of the force used by a prison

official, the defendant will ordinarily be entitled to judgment as a matter of law. *See*

*Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir.1999) (explaining that "force does not

violate the Eighth Amendment merely because it is unreasonable or unnecessary");

*McBride,* 170 Fed.Appx. at 657 (although correctional officers could arguably have used

less force after subduing inmate, inmate "failed to produce evidence showing that these

measures were taken 'maliciously and sadistically for the very purpose of causing

harm.'") (citations omitted).

Clearly, the only inference that can be drawn from the events of 23 March 2007

and 7 June 2007 is that whatever force, if any,  was applied by the Defendants in a good-

faith effort to maintain or restore discipline, not maliciously and sadistically to cause

harm.  As such, the use of force by the Defendants did not constitute cruel and unusual

punish, and was not a violation of the Plaintiff's Eighth Amendment rights.

## 2.  Conditions of Confinement

The Plaintiff alleges that his Eighth Amendment rights against Cruel and Unusual

Punishment were violated by being required to lie on a steel bed without a mattress.  The

mattress was removed in accordance with a standing policy of Easterling Correctional

Facility that requires that mattresses be removed from the disciplinary segregation units

daily, Monday through Friday, at 6:00 AM and returned to the cell at 6:00 PM, except for

state holidays.  The policy in question is Standard Operating Procedures (SOP) C-30,

Page 8.

Essentially, the policy of removing mattresses simply means that an inmate in

disciplinary segregation may not lie in his bed cosseted in the comfort of his mattress during what is, essentially, normal working hours for the civilian world, to wit, during the day from Monday through Friday.

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" ' so as to amount to the denial of a basic human need. *Chandler,* 379 F.3d at 1289 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)). A prisoner must prove the denial of "the minimal civilized measure of life's necessities." *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). The challenged condition must be "extreme." *Id.* Although an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S.Ct. at 2482.

Clearly, being deprived of the comfort of his mattress during the working hours of

a work week does not violate the Eighth Amendment and the Plaintiff has suffered no harm from not having his mattress. This is a far cry from the facts in *Chandler v. Baird,* 926 F.2d 1057 (11th Cir.1991). where it was alleged, among other things, that Chandler's Eighth Amendment rights were violated by confinement in a cold cell with no clothes except undershorts and with a plastic-covered mattress without bedding; filth on the cell's floor and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste, and linen; and the earlier occupancy of the cell by an inmate afflicted with an HIV virus. The averments of a cold cell were supplemented by specifics: that the temperature was as low as 60 degrees, that it was "ice cold", that Chandler slept on the floor and on occasion huddled with a roommate, sleeping between two mattresses.

When considered against the cruel and unusual punishments set forth in *Chandler*, the mere deprivation of a mattress during the working hours of a work week, absence any special circumstances, hardly seems worthy of comment as it just does not rise to the level of a constitutional violation.

### 3. Classification

The Plaintiff complains that he is not properly classified. Even assuming an incorrect classification, his constitutional rights were not violated.

The Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. An inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515

U.S. 472 at 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995),  Moreover, a prisoner has no

constitutional right to remain incarcerated in a particular prison or to be held in a specific

security classification. *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50

L.Ed.2d 236 (1976) (Constitution itself does not confer any right upon an inmate to any

particular custody or security classification); *Meachum v. Fano,* 427 U.S. 215, 225, 96

S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("Confinement in any of the State's institutions is

within the normal limits or range of custody which the conviction has authorized the

State to impose."); *see also Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75

L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675

(1983).

The Complaint fails to state a claim for which relief can be granted concerning the

Plaintiff's classification.

### 4.  Immunity

The Defendants,  in their official capacity,  assert that they are immune from suit

pursuant to the Eleventh Amendment and § 14, Alabama Constitution of 1901.  When a

government defendant is sued in his official capacity under federal law, the claim is

treated as a claim directly against the state or local government entity.  Consequently the

Defendant is protected by sovereign immunity under the Eleventh Amendment for claims

for money damages against him in his official capacities.  *Jackson v. Georgia Dep't of*

*Trans., 16 F 3d 1573, 1575 (11th Cir. 1994); Lancaster v. Monroe County, Ala., 116 F.*

*3d.* 1419.  The Defendants in this case have not consented to suit nor have they waived

their right to sovereign immunity.  The State of Alabama has not consented to suit or

waived its right to sovereign immunity as evidence by § 14, Alabama Constitution of 1901.

Sued in their individual capacity also, the Defendants assert that they are entitled to the protection of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir.2003)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple,* 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986); *see also Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain ..., the infliction of pain totally without penological justification ..., [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987) (citing *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981)). Further, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby,* 379 F.3d 1278, 1288 (11th Cir.2004)

(citing *Rhodes,* 452 U.S. at 345-46, 101 S.Ct. at 2398- 99). The Eighth Amendment, however, "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner." ' *Campbell v. Sikes,* 169 F.3d 1353, 1362 (11th Cir.1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). Furthermore, "the Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400. "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." ' *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). Prison conditions violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Id.*

In *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--*e.g.,* food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney,* 489 U.S. at 199-200, 109 S.Ct. at 1005-1006 (citations omitted).

Taken in a light most favorable to the Plaintiff, nothing in his complaint as

amended comes close to the level of inhumane treatment necessary for the Plaintiff to prove that his Eighth Amendment rights to be free of Cruel and Unusual Punishment have been violated.  None of the actions of the Defendants constitutes a violation of his Eight Amendment rights and the Defendants are entitled to the shield of Qualified Immunity.

**5. Richard Allen**

Defendant Richard Allen asserts that the Plaintiff fails to state a claim against him for which relief can be granted.  Plaintiff totally failed to make any factual allegations against the Defendant Allen whatsoever beyond merely naming him as a party defendant.

## **CONCLUSION**

The Defendants respectfully submit that there is no issue of material fact and that they are entitled to judgement as a matter of law.

Respectfully submitted,

TROY KING
Attorney General

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 – fax
jwallace@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 7th day of September, 2007, electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I further certify that I have served a copy of the same upon the Plaintiff by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Courtney Boyd, AIS 208921
Easterling Correctional Facility
200 Wallace Drive
Clio, AL 36017

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
Assistant Attorney General

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921　　　　)
　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
VS.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　CASE NO. 2:07-CV-524-MEF
　　　　　　　　　　　　　　　　)
SUSANNE BUSH, et al.,　　　　　　)
　　　Defendant (s)　　　　　　　　)

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Mary Lee, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Mary Lee, and I am presently employed as Correctional Lieutenant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 23, 2007, Captain Kenneth Sconyers instructed me, Lt. Mary Lee, to have Inmate Courtney Boyd, B/208921, placed in the Restricted Privilege Dorm (C-1) pending investigation for making false statements or charges to an ADOC employee. I instructed Inmate Boyd to report to Dorm C-1. Inmate Boyd refused to comply with my instruction. Sgt. Marcia Scott and I escorted Inmate Boyd to Dormitory C-1. I ordered Inmate Boyd to enter the Dorm C-1. Inmate Boyd refused to comply with the order. I grasped Inmate Boyd by his left shoulder and arm and attempted to escort Inmate Boyd into C-1. Inmate Boyd began to resist and pulled away and turned toward me in an aggressive manner. Officer Anthony Williams and Officer Bobby Lingo place Inmate Boyd on the floor. Officers Williams and Lingo placed handcuffs on Inmate Boyd. Both Officers Williams and Lingo picked Inmate Boyd up off the floor. Sgt. Shawn Logan entered C-1 to assist with Inmate Boyd. I, Sgt. Scott, Sgt. Logan, and Officer Williams escorted Inmate Boyd to the Health Care Unit for examination. While escorting Inmate Boyd to the Health Care Unit, Inmate Boyd fell on the sidewalk. I radioed the Health Care Unit Officer to escort a nurse to my location. Inmate Boyd then got up and continued walking to the Health Care Unit. Inmate Boyd was examined and released from the Health Care Unit (Exhibit #1). Inmate Boyd's allegation that he was dragged is not true. At no time did I or any other staff drag Inmate Boyd.

_____
MARY LEE

DEFENDANT'S
EXHIBIT

PENGAD 800-631-6989

Affidavit – Mary Lee
Civil Action- 2:07-CV-524-MEF
Page 2


SWORN TO AND SUBSCRIBED TO before me this the _____10th_____ day of
_____July_____, 2007.                    _____Linda E. Teal_____
                                          NOTARY PUBLIC

My Commission Expires: _____7-15-07_____



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY _Easterling_ | ☐ SICK CALL ☐ EMERGENCY |
| 3 /23/07 | 10³⁵ ☑AM ☐PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☑ OUTPATIENT |

| ALLERGIES _NKDA_ | _Wt 172_ | CONDITION ON ADMISSION ☑GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

| VITAL SIGNS: TEMP _98.3_ | ORAL RECTAL | RESP. _18_ | PULSE _72_ | B/P _108.88_ | RECHECK IF SYSTOLIC <100> 50 |

**NATURE OF INJURY OR ILLNESS**

S: " I went into CA and they threw me on the ground & cuffed me."

| ABRASION /// | CONTUSION ※ | BURN ×× ×× | FRACTURE Z Z | LACERATION / ___ SUTURES |

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

O: Inmate to HCU for Doc Body Chart. Inmate states my knees & my head hurts. Inmate has scrape noted to Ⓛ knee. No bleeding noted @ this time. No abrasion noted to head noted @ this time - no other cuts, bruise or abrasion noted @ this time. A&O x 3. Skin W/D to touch + resp. even. No s/s noted & no visible distress noted.

A: Doc Body Chart

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
| P: no Rx indicated @ this time | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**
Return if needed

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | ☐ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
| 3 /23 07 | 10³⁰ ☑AM ☐PM | | | |

| NURSE'S SIGNATURE | DATE 3/23/07 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |

| INMATE NAME (LAST, FIRST, MIDDLE) | | DOC# | DOB | R/S | FAC. |
| Boyd Courtney | | 208921 | 12/1/81 | B/m | Easterling |

pg 3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| COURTNEY BOYD, #208921 | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     VS. | ) | |
| | ) | CASE NO. 2:07-CV-524-MEF |
| | ) | |
| SUSANNE BUSH, et al., | ) | |
|     Defendant (s) | ) | |

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Anthony Williams, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Anthony Williams, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 23, 2007, Lt. Mary Lee escorted Inmate Courtney Boyd, B/208921, to Dorm C-1 (Restricted Privileges Dorm). Inmate Boyd refused to enter the Dorm when instructed by Lt. Lee. Lt. Lee grasped Inmate Boyd by his left shoulder and arm and attempted to escort Inmate Boyd into C-1. Inmate Boyd pulled away from Lt. Lee and approached Lt. Lee and Sgt. Marcia Scott in a hostile and threatening manner. Lt. Lee, Officer Bobby Lingo, and I placed Inmate Boyd on the floor and placed handcuffs on Inmate Boyd. I assisted with escorting Inmate Boyd to the Health Care Unit. As Inmate Boyd was being escorted, Inmate Boyd fell down on the sidewalk. Lt. Lee radioed the Health Care Unit and advised the Health Care Unit Officer to escort a nurse to her location. Inmate Boyd then got up and continued to walk to the Health Care Unit where he was examined by the nurse. At no time did I or anyone drag Inmate Boyd across the ground while he was being escorted.

ANTHONY WILLIAMS

SWORN TO AND SUBSCRIBED TO before me this the ___10th___ day of
____July____, 2007.

_Linda E. Jeal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

DEFENDANT'S
EXHIBIT
2
PENGAD 800-631-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921          )
    Plaintiff,               )
                             )
    VS.                      )
                             )          CASE NO. 2:07-CV-524-MEF
                             )
SUSANNE BUSH, et al.,           )
    Defendant (s)            )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Marcia Scott, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Marcia Scott, and I am presently employed as Correctional Sergeant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 23, 2007, I, Sgt. Marcia Scott was assigned as the Assistant Shift Commander. At approximately 10:20 AM, I assisted Lt. Mary Lee, Sgt. Shawn Logan, and Officer Anthony Williams in escorting Inmate Courtney Boyd, B/208921, from Dorm C-1 to the Health Care Unit. As Inmate Boyd was being escorted, he fell down on the sidewalk. Lt. Lee radioed the Health Care Unit that Inmate Boyd had fallen down. Inmate Boyd then got up and proceeded to walk to the Health Care Unit. At no time did I observe anyone drag Inmate Boyd across the ground while he was handcuffed.

_Marcia Scott_
MARCIA SCOTT


SWORN TO AND SUBSCRIBED TO before me this the ___10th___ day of
___July___, 2007.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___



DEFENDANT'S
EXHIBIT
3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921　　　　　　)
　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　VS.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　CASE NO. 2:07-CV-524-MEF
　　　　　　　　　　　　　　　　　　)
SUSANNE BUSH, et al.,　　　　　　　)
　　　Defendant (s)　　　　　　　　　)

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Shawn Logan, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Shawn Logan, and I am presently employed as Correctional Sergeant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 23, 2007, I, Sgt. Shawn Logan, was assigned as Segregation Unit Commander. At approximately 10:20 AM, I assisted Lt. Mary Lee, Sgt. Marcia Scott and Officer Anthony Williams in escorting Inmate Courtney Boyd, B/208921, from Dorm C-1 to the Health Care Unit. As Inmate Boyd was being escorted to the Health Care Unit, he fell down on the sidewalk. Lt. Lee radioed the Health Care Unit Rover, Officer Stephanie Govan, and advised her to escort a nurse to the sidewalk in front of Dorm B because Inmate Boyd had fallen down. Inmate Boyd then got up and was escorted to the Health Care Unit. At no time did I or anyone else involved drag Inmate Boyd across the ground while he was handcuffed behind his back.

_Shawn C. Logan_
SHAWN LOGAN

SWORN TO AND SUBSCRIBED TO before me this the ___10th___ day of
___July___, 2007.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___



DEFENDANT'S EXHIBIT 4

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　VS.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　CASE NO. 2:07-CV-524-MEF
　　　　　　　　　　　　　　　　　　　)
SUSANNE BUSH, et al.,　　　　　　　　)
　　　Defendant (s)　　　　　　　　　　)

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Darrell Bell, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Darrell Bell, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 7, 2007, at approximately 8:24 PM, I, Officer Darrell Bell, observed Inmate Courtney Boyd, B/208921, lying in his assigned cell B-11, non-responsive. Sgt. Gerald Wright was notified of the incident. Sgt. Wright entered cell B-11 and attempted to handcuff Inmate Boyd. Inmate Boyd clinched his fists. Sgt. Wright instructed Inmate Boyd again to raise his hands to be handcuffed. Inmate Boyd raised his head and looked at Sgt. Wright and smiled. Sgt. Wright grasped Inmate Boyd's left leg and left arm and instructed me to grasp Inmate Boyd's right leg and right arm. Sgt. Wright and I escorted Inmate Boyd to the Segregation Unit Lobby. Inmate Boyd was smiling while he was being escorted. Lt. Nathaniel Lawson questioned Inmate Boyd about the incident. Lt. Lawson and Sgt. Wright placed Inmate Boyd in a chair in the Lobby were he was examined by Nurse Valley Hathaway.

_Darrell Bell_
DARRELL BELL

SWORN TO AND SUBSCRIBED TO before me this the _12th_ day of
_July_　　　　　　, 2007.

_Linda A. Wilkinson_
NOTARY PUBLIC

My Commission Expires: _9/16/2007_

DEFENDANT'S
EXHIBIT
5

PENGAD 800-631-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921          )
    Plaintiff,              )
                      )
VS.                            )
                      )     CASE NO. 2:07-CV-524-MEF
                      )
SUSANNE BUSH, et al.,          )
    Defendant (s)           )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Joseph Danzey, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Joseph Danzey, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 7, 2007, I, Officer Joseph Danzey, was assigned as Dorm B (Segregation Unit) Rover. At approximately 8:30 PM, I was inside the Segregation Unit Office. I have no knowledge of the incident concerning Inmate Courtney Boyd, B/208921, Sgt. Gerald Wright, and Officer Darrell Bell.

_Joseph Danzey COI_
JOSEPH DANZEY

SWORN TO AND SUBSCRIBED TO before me this the ___13th___ day of
___July___, 2007.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-11-11___

DEFENDANT'S
EXHIBIT
6
PENGAD 800-631-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921 )
    Plaintiff, )
  )
VS. )
  )    CASE NO. 2:07-CV-524-MEF
  )
SUSANNE BUSH, et al., )
    Defendant (s) )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gerald Wright, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gerald Wright, and I am presently employed as Correctional Sergeant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 7, 2007, at approximately 8:10 PM, I was summoned to the Segregation Unit. Officer Darrell Bell reported to me that Inmate Courtney Boyd was lying on the floor in Cell-11 un-responsive. At approximately 8:24 PM, Officer Bell and I proceeded to Cell-11. I observed through observation window Inmate Boyd lying on the floor, conscious but un-responsive. Officer Bell and I removed Inmate Torriano Carroll, B/155117, from the cell without incident. Inmate Boyd remained on the floor non-compliant. Inmate Boyd continued to be defiant by not responding to any verbal commands. Inmate Boyd was known for having disruptive and defiant behavior. I instructed Inmate Boyd again to raise his hands to be handcuffed. Inmate Boyd raised his head and looked at me, grinned and laid his head back on the floor. Inmate Boyd then clinched his fists and made his body stiff and rigid. I instructed Officer Bell to place his hands on Inmate Boyd's right leg and right arm. I placed my hands on Inmate Boyd's left leg and left arm and we removed him from the cell and escorted him to the lobby. At approximately 8:26 PM, Lt. Nathaniel Lawson and I placed Inmate Boyd in a chair in the lobby to be examined by Nurse Valley Hathaway. At approximately 9:20 PM, Inmate Boyd was released by Nurse Hathaway and returned to his assigned cell.

_____
GERALD WRIGHT

SWORN TO AND SUBSCRIBED TO before me this the _12th_ day of
_July_____, 2007.

_____
_Linda A. Wilkinson_
NOTARY PUBLIC

My Commission Expires: _9/16/2007_

PENGAD 800-531-6989

DEFENDANT'S
EXHIBIT

7

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| COURTNEY BOYD, #208921 )<br>    Plaintiff, )<br> )<br>VS. )<br> )<br> )<br>SUSANNE BUSH, et al., )<br>    Defendant (s) ) | CASE NO. 2:07-CV-524-MEF |

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Nathaniel Lawson, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Nathaniel Lawson, and I am presently employed as Correctional Lieutenant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 7, 2007, Sgt. Gerald Wright reported to me that he (Wright) had approached Inmate Courtney Boyd's, #208921, cell and observed him lying conscious on the floor on his back. Sgt. Wright had asked Inmate Boyd several times what was wrong with him. Inmate Boyd did not respond. Sgt. Wright ordered Inmate Boyd to get up and walk to the cell door to be handcuffed. Inmate Boyd did not comply with the order, and continued to be defiant by not responding to any verbal commands. Sgt. Wright and Officer Darrell Bell entered Inmate Boyd's cell and escorted him to the Lobby area. I exited the Segregation Commander's Office to the Lobby area and observed Inmate Boyd lying on the floor. I questioned Inmate Boyd. Inmate Boyd stated that he had fallen off the bottom bed in his cell. Inmate Boyd was examined by Nurse Valley Hathaway in the Segregation Unit (Exhibit #1).

NATHANIEL LAWSON

SWORN TO AND SUBSCRIBED TO before me this the 12th day of July, 2007.

NOTARY PUBLIC

My Commission Expires: 9/16/2007

DEFENDANT'S
EXHIBIT
8
PENGAD 800-631-6989

EXHIBIT #1

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY  _Easterling_ | |
|---|---|---|---|
| 6/7/07 | 8:10 AM/PM | ☐ SIR ☐ PDL ☐ ESCAPEE | ☐ SICK CALL  ☐ EMERGENCY  ☒ OUTPATIENT |

| ALLERGIES | CONDITION ON ADMISSION |
|---|---|
| | ☐ GOOD  ☒ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA |

| VITAL SIGNS: TEMP  97.8 ORAL/RECTAL | RESP.  20 | PULSE  100 | B/P 100/76 | RECHECK IF SYSTOLIC <100>50 ___/___ |

**NATURE OF INJURY OR ILLNESS**

S- "I fell off my bottom bunk on the floor."

O- B/m (L+O×3 but won't respond when spoken to he is just pointing to his ® side. When he finally spoke he said his side hurts. Small dime sized bruise noted to ® hip area & a half dollar sized bump to

**PHYSICAL EXAMINATION**

the back of his head. O open areas noted. Pupils equal & react to light Pedal pulse ×2. Pain on palpation to ® side. Abd. soft non distended & tender to touch to ® side. Bowel sounds present × 4 quads Ø numbness or tingeing in extremities. Will notify Dr. Darbouze I'm So pain as a sharp pain that radiates S® leg as he tries to walk.

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / SUTURES |
|---|---|---|---|---|



bump

PROFILE RIGHT OR LEFT

contusion

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| A-alt. in comfort. X-ray Feldene 20mg po now & ®series chest X-ray. Ativan po Dr. Darbouze /L. Hathaway | | |

**DIAGNOSIS**  See above

**INSTRUCTIONS TO PATIENT**  See above

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | ☐ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE |
|---|---|---|---|---|
| 6/7/07 | 9:20 AM/PM | Seg | | ☒ SATISFACTORY ☐ POOR  ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE  L Hathaway | DATE | PHYSICIAN'S SIGNATURE | DATE  6/8/07 | CONSULTATION |

pg2

| INMATE NAME (LAST, FIRST, MIDDLE)  Boyd  Courtney | DOC#  208924 | DOB  12/11/81 | R/S  B/M | FAC.  East. |

PHS-MD-70007     (White – Record Copy, Yellow – Pharmacy Copy)

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921       )
    Plaintiff,               )
                              )
VS.                         )
                              )       CASE NO. 2:07-CV-524-MEF
                              )
SUSANNE BUSH, et al.,       )
    Defendant (s)             )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared LaGreta McClain, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is LaGreta McClain, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 7, 2007, I, Officer LaGreta McClain, was assigned as the Segregation Cubicle Officer. I was instructed by Sgt. Gerald Wright to open cell #B11. I observed Officer Darrell Bell and Sgt. Wright pull Inmate Courtney Boyd, B/208921, out of cell #B11 by the pants leg of his jumpsuit and his arm. Sgt. Wright and Officer Bell escorted Inmate Boyd to the Segregation Unit Lobby area where Lt. Nathaniel Lawson questioned Inmate Boyd about the incident. Nurse Valley Hathaway entered the Segregation Unit and examined Inmate Boyd.

_____
LAGRETA McCLAIN

SWORN TO AND SUBSCRIBED TO before me this the 12th day of July, 2007.

_____
NOTARY PUBLIC

My Commission Expires: 9/16/2007

DEFENDANT'S EXHIBIT
9
PENGAD 800-631-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921           )
    Plaintiff,                   )
                                 )
VS.                              )
                                 )   CASE NO. 2:07-CV-524-MEF
                                 )
SUSANNE BUSH, et al.,            )
    Defendant (s)                )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Kenneth Sconyers, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Kenneth Sconyers, and I am presently employed as Correctional Captain, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 23, 2007, I instructed Lt. Mary Lee, First Shift Commander, to have Inmate Courtney Boyd placed in the Restricted Privilege Dormitory (C-1) pending investigation for violation of Departmental Rule #41 – Making false statement or charge to a ALDOC Employee with intent to deceive the employee or prejudice another person. Inmate Boyd had attempted to prejudice Nurse Susie Bush's supervisor, Health Service Administrator Kay Wilson, against her by falsely accusing Nurse Bush of making discriminating remarks about him. As reports indicated (Exhibit #1), Lt. Lee advised Inmate Boyd of his assignment to the Restricted Privilege Dorm. Inmate Boyd refused orders by both Lt. Lee and Sgt. Marcia Scott to report to Dorm C-1. Lt. Lee and Sgt. Scott then escorted Inmate Boyd to Dorm C-1 where he repeatedly refused orders by Lt. Lee and Sgt. Scott to enter the dorm. Dormitory Rovers Bobby Lingo and Anthony Williams, who were present at the time, attempted to assist. Officer Lingo placed his hands on Inmate Boyd's right shoulder and arm as he and Lt. Lee and attempted to escort Inmate Boyd into the dorm. Inmate Boyd pulled away from Lt. Lee, turned toward Sgt. Scott with clenched fists, and stated, "Y'all can't make me go in there!" Officer Williams grasped Inmate Boyd's left arm, and he, Officer Lingo, and Lt. Lee placed Inmate Boyd on the floor of Dorm C-1. Inmate Boyd continued to resist as Officer Lingo handcuffed him to the rear. Sgt. Shawn Logan approached Dorm C-1 and assisted in escorting Inmate Boyd to the Health Care Unit (All inmates and Officers involved in any use of force routinely receive an immediate medical examination following any use of force). While in transit to the Health Care Unit, Inmate Boyd allegedly fell on the sidewalk. The Health Care Unit was immediately notified, and a Nurse responded to the scene. Inmate Boyd then got up and walked to the Health Care Unit where he was examined by Nurse Deborah Shehane. As indicated on the Medical Report, Inmate Boyd



DEFENDANT'S
EXHIBIT
10

PENGAD 800-631-6989

Affidavit – Kenneth Sconyers
Civil Action – 2:07 CV-524-MEF
Page 2

suffered only a slight scrape to his knee as a result of the fall or being forced to the Dorm C-1 lobby floor. Inmate Boyd was then placed in Administrative Segregation pending additional charges of RV# 56- Failure to obey a direct order of a DOC Official, and RV# 44 – Threats.  Lt. Willie Bryant, who was not a participant in the use of force, conducted a Use of Force Investigation. Lt. Bryant concluded that the use of force against Inmate Boyd was justified and that only the minimal amount of force was used.

I have in no way violated Inmate Boyd's constitutional rights.  I assert that any injury or disciplinary action received by Inmate Boyd was a direct result of his non-conformity to institutional rules and regulations.


KENNETH SCONYERS

SWORN TO AND SUBSCRIBED TO before me this the ___5th___ day of
___July___, 2007.

NOTARY PUBLIC

My Commission Expires: __03|27|07.__

EXHIBIT #1

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: Easterling Correctional Facility | 2. Date: 3/23/07 | 3. Time: 9:40 AM | 4. Incident Number: ECF- 07- 307   Class Code: C |
|---|---|---|---|
| 5. Location Where Incident Occurred: Dormitory C-1 (Restricted Privileges Dorm) | | 6. Type of Incident: R/V #56-Failure to obey a direct order of an ADOC Official and R/V #44-Threats (Use of Force) | |
| 7. Time Incident Reported: 10:26 AM   RECEIVED APR - 9 2007 | | 8. Who Received Report: Captain Kenneth Sconyers | |

| 9. Victims: | Name | | | AIS |
|---|---|---|---|---|
| a. | N/A | | No. | N/A |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | Courtney Boyd | No. | B/208921 | a. | Anthony Williams, CO I | No. | N/A |
| b. | | No. | | b. | Bobby Lingo, CO I | No. | |
| c. | | No. | | c. | Marcia Scott, CO II | No. | |
| d. | | No. | | d. | | No. | |
| e. | | No. | | e. | | No. | |
| | | | | f. | | No. | |
| | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence

N/A

13. Description of Evidence:

N/A

14. Chain of Evidence:

a.  N/A
b.
c.
d.
e.

15. Narrative Summary:

On March 23, 2007, Lt. Mary Lee was assigned as the First Shift Commander and Sgt. Marcia Scott was assigned as the Assistant First Shift Commander. At approximately 9:40 AM, Lt. Lee escorted Inmate Courtney Boyd, B/208921, to the Shift Commander's Office, and advised Inmate Boyd that was being placed in Dormitory C-1 (Restricted Privileges Dorm) per Captain Kenneth Sconyers for Rule Violation #41-Making false statements or charges to an ADOC Employee with intent to Deceive the Employee or Prejudice Another Person. Lt. Lee then ordered Inmate Boyd to report to Dormitory C-1. Inmate Boyd refused to comply with the order. Sgt. Scott also ordered Inmate Boyd to report to Dormitory C-1. Inmate Boyd again refused to report to Dormitory C-1. Lt. Lee and Sgt. Scott exited the Shift Commander's Office and escorted Inmate Boyd to Dormitory C-1. At approximately 9:52 AM, Lt. Lee, Sgt. Scott, and Inmate Boyd entered Dormitory C lobby. Lt. Lee ordered Inmate Boyd to enter C-1. Inmate Boyd refused to comply with the order. Sgt. Scott again ordered Inmate Boyd to enter C-1. Inmate Boyd again refused to comply with the order. Officer Bobby Lingo, the assigned C-1 Rover, and Officer Anthony Williams, the assigned C-2 Rover, entered the lobby. Officer Lingo grasped Inmate Boyd by his right shoulder and arm. Lt. Lee grasped Inmate Boyd by his left shoulder and arm. Lt. Lee and Officer Lingo attempted to escort Inmate Boyd into C-1. Inmate Boyd began to resist. Inmate Boyd pulled away from Lt. Lee, and turned around in an



IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921 )
    Plaintiff, )
     )
     )
    VS. )
     )    CASE NO. 2:07-CV-524-MEF
     )
SUSANNE BUSH, et al., )
    Defendant (s) )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Willie Bryant, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Willie Bryant, and I am presently employed as Correctional Lieutenant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

According to our Standard Operating Procedures (SOP) C-30, Page 8 (Exhibit #1) Disciplinary Segregation inmates' mattresses will be removed daily, Monday through Friday, from 6AM to 6PM, except on state holidays. Our SOP is a Long Standard Procedure. I do not have a reason why the mattresses are taken. Inmates are not being forced to lie on the steel bed. They get their mattress back during evening time. Inmates in Segregation can sit on their bed during day light time. They do not have to lie on the steel bed.

_____
WILLIE BRYANT

SWORN TO AND SUBSCRIBED TO before me this the **6th** day of
**September**, 2007.

_____
NOTARY PUBLIC

My Commission Expires: **7-11-11**

DEFENDANT'S
EXHIBIT
11

PENGAD 800-631-6989

Exhibit #1

EASTERLING CORRECTIONAL FACILITY                                C-30
STANDARD OPERATING PROCEDURES                          OPR:  CAPTAIN
ACA:    4237,4238,4239,4240,4245,4246,4248,4249,4250,4251,4252,4253,4254,
4255,4256,4257,4258 AND 4260.

## THE SEGREGATION UNIT

I.   PURPOSE:

A.   The purpose of this Standard Operating Procedure is to
     establish a standard system of operations of the special units
     for inmates requiring single cell placement.

B.   This Standard Operating Procedure is applicable to all
     employees involved in the management, operation or utilization
     of these units, especially those employees assigned to the
     units and those required to provide services to inmates
     residing in the units.

II.  RESPONSIBILITY:

A.   Segregation Supervisors and Segregation Officers will be
     responsible for the safe and orderly management of the
     Segregation Unit and the proper conduct of the inmates being
     held there.

B.   Segregation Officers will be accountable for the safety and
     security of the inmates and the inmate's property entrusted to
     him/her. Further, the Segregation Supervisor and Segregation
     Officers will be accountable for all keys and other items of
     equipment issued to them for the performance of their duty.

III. DEFINITIONS:

A.   SINGLE CELL PLACEMENT is defined as those inmates whose
     custody level (Maximum or Close) requires their being housed
     in single cells and their separation from general population
     and other segregation inmates in a less restrictive custody.

B.   ADMINISTRATIVE SEGREGATION is defined as a form of separation
     from general population when the continued presence of the
     inmate in general population would pose a serious threat to
     life, property, self, staff or other inmates, or to the
     security or orderly operation of the institution. A security
     staff member in the rank of Sergeant or above may place an
     inmate into Administration-Segregation pending completion of
     an investigation or Due Process Hearing.

the cell door of each inmate that is placed in Disciplinary Segregation.

3.  If the inmate commits another offense while in disciplinary segregation status, the inmate will be charged with this additional violation. The arresting officer will issue a major disciplinary. Any additional approved disciplinary segregation time will be added onto the inmate's current disciplinary segregation sentence (to run consecutively), unless the hearing officer specifically recommends that the additional disciplinary time be served concurrently.

4.  If no Disciplinary Segregation space is available, the inmate's name will go on a waiting list. As space becomes available, the inmate will be processed into disciplinary segregation.

5.  The mattress, of all the inmates in disciplinary segregation status will be removed daily, Monday through Friday, from 6:00 AM to 6:00 PM, except on state holidays. A security chain will be placed on the door and the inmate will be ordered to slide his mattress through the opening of the door. If the inmate refuses or is a behavior problem, the inmate will be handcuffed to the rear and the security staff will then remove the mattress out of the cell. There will be at least two officers present during the time when the mattress is being removed from the inmate's cell. The inmate will receive a disciplinary for violation of rule #56.

VI.  OPERATIONS:  The following procedures are applicable to all categories of segregation unless exceptions or exclusions are stated:

A.   SEARCHING OF INMATES BEFORE BEING TAKEN OUT OF THEIR CELLS.

1.  Before any inmate housed in the segregation unit is removed from his cell, for any reason other than showering, the inmate **MUST** be searched. This search will be done in the following manner:

a.  An officer will go to the inmate's cell and verify that the need to bring the inmate out of the cell still exists. (Example: If an inmate had signed up for group exercise but no longer wishes to

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921          )
    Plaintiff,              )
                            )
VS.                            )
                            )     CASE NO. 2:07-CV-524-MEF
                            )
SUSANNE BUSH, et al.,          )
    Defendant (s)           )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Matthew Jordan, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Matthew Jordan, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I have no knowledge of the incident concerning Inmate Courtney Boyd, B/208921, that occurred on June 7, 2007.

                                      MATTHEW JORDAN

SWORN TO AND SUBSCRIBED TO before me this the 20th day of July, 2007.

                              Linda A. Wilkinson
                              NOTARY PUBLIC

My Commission Expires: 9/16/2007

DEFENDANT'S
EXHIBIT
12

PENGAD 800-831-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921      )
    Plaintiff,               )
                      )
VS.                     )
                      )     CASE NO. 2:07-CV-524-MEF
                      )
SUSANNE BUSH, et al.,       )
    Defendant (s)          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Kenneth Sconyers</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Kenneth Sconyers</u>, and I am presently employed as <u>Correctional Captain</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On March 23, 2007, I instructed Lt. Mary Lee, First Shift Commander, to have Inmate Courtney Boyd placed in the Restricted Privilege Dormitory (C-1) pending investigation for violation of Departmental Rule #41 – Making false statement or charge to a ALDOC Employee with intent to deceive the employee or prejudice another person. Inmate Boyd had attempted to prejudice Nurse Susie Bush's supervisor, Health Service Administrator Kay Wilson, against her by falsely accusing Nurse Bush of making discriminating remarks about him. As reports indicated (Exhibit #1), Lt. Lee advised Inmate Boyd of his assignment to the Restricted Privilege Dorm. Inmate Boyd refused orders by both Lt. Lee and Sgt. Marcia Scott to report to Dorm C-1. Lt. Lee and Sgt. Scott then escorted Inmate Boyd to Dorm C-1 where he repeatedly refused orders by Lt. Lee and Sgt. Scott to enter the dorm. Dormitory Rovers Bobby Lingo and Anthony Williams, who were present at the time, attempted to assist. Officer Lingo placed his hands on Inmate Boyd's right shoulder and arm as he and Lt. Lee and attempted to escort Inmate Boyd into the dorm. Inmate Boyd pulled away from Lt. Lee, turned toward Sgt. Scott with clenched fists, and stated, "Y'all can't make me go in there!" Officer Williams grasped Inmate Boyd's left arm, and he, Officer Lingo, and Lt. Lee placed Inmate Boyd on the floor of Dorm C-1. Inmate Boyd continued to resist as Officer Lingo handcuffed him to the rear. Sgt. Shawn Logan approached Dorm C-1 and assisted in escorting Inmate Boyd to the Health Care Unit (All inmates and Officers involved in any use of force routinely receive an immediate medical examination following any use of force). While in transit to the Health Care Unit, Inmate Boyd allegedly fell on the sidewalk. The Health Care Unit was immediately notified, and a Nurse responded to the scene. Inmate Boyd then got up and walked to the Health Care Unit where he was examined by Nurse Deborah Shehane. As indicated on the Medical Report, Inmate Boyd



DEFENDANT'S
EXHIBIT
10

PENGAD 800-631-6989

Affidavit – Kenneth Sconyers
Civil Action – 2:07 CV-524-MEF
Page 2

suffered only a slight scrape to his knee as a result of the fall or being forced to the Dorm C-1 lobby floor. Inmate Boyd was then placed in Administrative Segregation pending additional charges of RV# 56- Failure to obey a direct order of a DOC Official, and RV# 44 – Threats. Lt. Willie Bryant, who was not a participant in the use of force, conducted a Use of Force Investigation. Lt. Bryant concluded that the use of force against Inmate Boyd was justified and that only the minimal amount of force was used.

I have in no way violated Inmate Boyd's constitutional rights. I assert that any injury or disciplinary action received by Inmate Boyd was a direct result of his non-conformity to institutional rules and regulations.


_____
KENNETH SCONYERS


SWORN TO AND SUBSCRIBED TO before me this the ___5th___ day of
___July___, 2007.

_____
NOTARY PUBLIC

My Commission Expires: __03/27/07.__

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: Easterling Correctional Facility | 2. Date: 3/23/07 | 3. Time: 9:40 AM | 4. Incident Number: ECF-07-307 | Class Code: C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred: Dormitory C-1 (Restricted Privileges Dorm) | | 6. Type of Incident: R/V #56-Failure to obey a direct order of an ADOC Official and R/V #44-Threats (Use of Force) | | |
| 7. Time Incident Reported: 10:26 AM   RECEIVED APR - 9 2007 | | 8. Who Received Report: Captain Kenneth Sconyers *K Sconyers Cpt* | | |

| 9. Victims: | Name | | | AIS |
|---|---|---|---|---|
| a. | N/A | | No. | N/A |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | Courtney Boyd | No. | B/208921 | a. | Anthony Williams, CO I | No. | N/A |
| b. | | No. | | b. | Bobby Lingo, CO I | No. | |
| c. | | No. | | c. | Marcia Scott, CO II | No. | |
| d. | | No. | | d. | | No. | |
| e. | | No. | | e. | | No. | |
| | | | | f. | | No. | |
| | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence

N/A

13. Description of Evidence

N/A

14. Chain of Evidence

a   N/A
b
c
d
e

15. Narrative Summary:

On March 23, 2007, Lt. Mary Lee was assigned as the First Shift Commander and Sgt. Marcia Scott was assigned as the Assistant First Shift Commander. At approximately 9:40 AM, Lt. Lee escorted Inmate Courtney Boyd, B/208921, to the Shift Commander's Office, and advised Inmate Boyd that was being placed in Dormitory C-1 (Restricted Privileges Dorm) per Captain Kenneth Sconyers for Rule Violation #41-Making false statements or charges to an ADOC Employee with intent to Deceive the Employee or Prejudice Another Person. Lt. Lee then ordered Inmate Boyd to report to Dormitory C-1. Inmate Boyd refused to comply with the order. Sgt. Scott also ordered Inmate Boyd to report to Dormitory C-1. Inmate Boyd again refused to report to Dormitory C-1. Lt. Lee and Sgt. Scott exited the Shift Commander's Office and escorted Inmate Boyd to Dormitory C-1. At approximately 9:52 AM, Lt. Lee, Sgt. Scott, and Inmate Boyd entered Dormitory C lobby. Lt. Lee ordered Inmate Boyd to enter C-1. Inmate Boyd refused to comply with the order. Sgt. Scott again ordered Inmate Boyd to enter C-1. Inmate Boyd again refused to comply with the order. Officer Bobby Lingo, the assigned C-1 Rover, and Officer Anthony Williams, the assigned C-2 Rover, entered the lobby. Officer Lingo grasped Inmate Boyd by his right shoulder and arm. Lt. Lee grasped Inmate Boyd by his left shoulder and arm. Lt. Lee and Officer Lingo attempted to escort Inmate Boyd into C-1. Inmate Boyd began to resist. Inmate Boyd pulled away from Lt. Lee, and turned around in an



03APR09

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Easterling Correctional Facility | Incident Number: ECF- 07- | Class Code: C |
|---|---|---|
| Date: 3/23/07 | | Type of Incident: R/V #56-Failure to obey a direct order of an ADOC Official and R/V #44-Threats (Use of Force) |

Narrative Summary (Continued) Page No. 2

aggressive and threatening manner, at Sgt. Scott, with his fists clinched and stated, "Y'all can't make me go in there." Officer Williams then grasped Inmate Boyd's left arm. Lt. Lee, Officer Lingo, and Officer Williams placed Inmate Boyd on the floor. Inmate Boyd continued to resist. The inmates in C-1 began encouraging Inmate Boyd to comply with the order. Officer Lingo placed handcuffs on Inmate Boyd's left arm. Officer Williams placed handcuffs on Inmate Boyd's right arm. Officers Lingo and Williams picked Inmate Boyd up off the floor. Sgt. Shawn Logan, the Segregation Commander, entered C-1 to assist with the incident. At approximately 10:20 AM, Lt. Lee, Sgt. Logan, Sgt. Scott, and Officer Williams escorted Inmate Boyd to the Health Care Unit. As Inmate Boyd was being escorted to the Health Care Unit, Inmate Boyd fell on the sidewalk. Lt. Lee via radio advised Officer Stephanie Govan, the assigned Health Care Unit Rover, to escort the Nurse to the sidewalk in front of Dormitory B, because Inmate Boyd had fallen on the sidewalk. Inmate Boyd then got up, and continued walking to the Health Care Unit. At approximately 10:25 AM, Inmate Boyd was examined by Nurse Deborah Shehane (See attached medical report). At approximately 10:26 AM, Lt. Lee reported the incident to Captain Kenneth Sconyers and Warden Carter F. Davenport. At approximately 10:30 AM, Inmate Boyd was released from the Health Care Unit. Captain Sconyers advised Lt. Lee to place Inmate Boyd in Administrative Segregation. At approximately 10:30 AM, Lt. Lee, Sgt. Scott, Sgt. Logan, and Officer Lingo escorted Inmate Boyd to the Segregation Unit. Inmate Boyd was processed into Administrative Segregation pending disciplinary action for R/V #56-Failure to obey a direct order of an ADOC Official and R/V #44-Threats. At approximately 10:45 AM, Officer Williams reported to the Health Care Unit and was examined by Nurse Mona Payne (See attached medical report). At approximately 10:51 AM, Officer Williams was released from the Health Care Unit and resumed his tour of duty. At approximately 11:15 AM, Officer Lingo reported to the Health Care Unit and was examined by Nurse Payne (See attached medical report). At approximately 11:22 AM, Officer Lingo was released from the Health Care Unit and resumed his tour of duty. At approximately 12:03 PM, Lt. Lee reported to the Health Care Unit and was examined by Nurse Diane Bowman (See attached medical report). At approximately 12:07 PM, Lt. Lee was released from the Health Care Unit and resumed her tour of duty. At approximately 1:37 PM, Lt. Lee completed a Duty Officer Report and e-mailed the report to the appropriate Officials (See attached Duty Officer Report). On March 26, 2007, Lt. Willie Bryant conducted a Use of Force Investigation Sheet (See attached Use of Force Investigation Sheet). (See attached statements of Sgt. Marcia Scott, Officer Bobby Lingo, and Officer Anthony Williams).

_Lt. Mary Lee_
Mary Lee, COS I



ADOC Form 302-B – June 1, 2005