IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD, #208921,           )
                                  )
        Plaintiff,                )
                                  )
v.                                )        CASE NO. 2:07-CV-524-MEF
                                  )              [WO]
                                  )
SUSANNE BUSH, et al.,             )
                                  )
        Defendants.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Courtney Boyd ["Boyd"], a state inmate and frequent litigant in this court, challenges the constitutionality of actions taken against him during his incarceration at the Easterling Correctional Facility ["Easterling"] in 2007. Boyd names Susanne Bush and Kay Wilson, nurses assigned to Easterling, Dr. Jean Darbouze, a physician employed at such facility, Richard Allen, the Commissioner of the Alabama Department of Corrections at the time of the complaint, and Darrell Bell, Gerald Wright, Marcia Scott, Mary Lee, Anthony Williams, Shawn Logan, Joseph Danzey, Matthew Jordan, Nathan Lawson, LaGreta McClain and Kenneth Sconyers, correctional officers employed at Easterling, as defendants in this cause of action.[1]

_____

[1] Although Boyd initially improperly identifies Joseph Danzey as officer Dansby, he does not dispute the proper name of this individual as supplied by the defendants.  In the interest of clarity, the court will utilize the correct name of this defendant - Joseph Danzey - for purposes of this Recommendation.

The allegations central to Boyd's complaint are that various correctional defendants subjected him to excessive force on March 23, 2007 and June 7, 2007. Boyd also complains that from March 23, 2007 until March 26, 2007 the medical defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. He further alleges defendant Bush denied him medical treatment due to his race and issued a false disciplinary against him in retaliation for writing a letter to an FBI agent complaining of a racially inflammatory statement Boyd initially alleged Bush had made.[2] Finally, Boyd challenges the temporary removal of his mattress while confined to disciplinary segregation, his custody classification status and denial of transfer to a less restrictive correctional facility. Boyd seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed special reports and supporting evidentiary materials addressing each of Boyd's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. *Order of October 17, 2007 - Court Doc. No. 58.* Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and Boyd's responses in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

---

[2]Boyd subsequently concedes he has no personal knowledge of who actually made the alleged derogatory comment.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

When the moving parties meet their evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). The defendants have met their evidentiary burden.  Consequently, to survive the defendants' properly supported motions for summary judgment, Boyd is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

4

(1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.");
*Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and

6

that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Boyd fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III. DISCUSSION

### A. Absolute Immunity

With respect to any claims Boyd lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his

7

[or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, each of the defendants is entitled to absolute immunity from those claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Respondeat Superior - Commissioner Richard Allen

Based on the court's review of Boys' complaint, the court finds that defendant Allen is sued solely due to his former position as Commissioner of the Alabama Department of Corrections.  However, the law is well settled that "supervisory officials are not liable

8

under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of subordinates/employees under either a theory of respondeat superior or vicarious liability); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (a prisoner simply cannot rely on theories of vicarious liability or respondeat superior to establish liability). Thus, defendant Allen can be liable for the actions about which Boyd complains only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Boyd does not allege that defendant Allen personally participated in the actions about which he complains. Additionally, it is undisputed defendant Allen while acting as commissioner was not involved in the daily operation of the Easterling Correctional Facility. Moreover, Boyd fails to present any facts which indicate a causal relationship between an action undertaken or policy enacted by defendant Allen and the alleged constitutional deprivations. A supervisory official "may be liable only for implementing

9

a policy that is 'itself a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'  *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir.1985)."  *Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2006).  Consequently, the claims lodged against defendant Allen lack an arguable basis in law and are therefore subject to summary dismissal pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[4]

### C.  Medical Treatment

Boyd complains the medical defendants acted with deliberate indifference to his medical needs, i.e., recurring pain in his lower back and body, from March 23, 2007 until March 26, 2007.  *Plaintiff's Complaint - Court Doc. No. 1* at 4 ("On 3-24-2007 until 3-26-2007, I was unable to get up off the floor because my lower back and lower body had went out.").  He further alleges that on March 24, 2007 correctional defendants Jordan and Danzey failed to ensure he receive medical treatment from health care personnel regarding alleged back pain.

Correctional officials and medical personal may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer*

---

[4] Although *Neitzke* interpreted 28 U.S.C. § 1915(d), the predecessor to 28 U.S.C. § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

*v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491

11

(11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the named defendants acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts."  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the

prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).  Thus, in order to survive summary judgment on his deliberate indifference claim, Boyd is "required to produce sufficient

evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To evade entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries).

Boyd has complained of back pain since a physical altercation with correctional officers at the Bibb Correctional Facility in June of 2003. As is relevant to the present complaint, Boyd maintains the medical defendants denied him adequate treatment for his back condition from March 23, 2007 through March 26, 2007 and alleges defendants Jordan and Danzey failed to assure his receipt of medical treatment on March 24, 2007 when he suffered severe back pain rendering him virtually immobile. Boyd asserts that "on March 23, 24, 25, [and] 26" of 2007 his back "went out" and he cold not move. *Plaintiff's First Amendment to the Complaint - Court Doc. No. 7* at 1. The medical and correctional defendants submitted various evidentiary materials which refute Boyd's suppositious allegations. Specifically, defendants Jordan and Danzey deny knowledge of any back problem suffered by Boyd on March 24, 2007. *Correctional Defendants' Exhibit 15 (Affidavit of Joseph Danzey) to the July 29, 2010 Supplemental Special Report - Court Doc. No. 183-1*; *Correctional Defendants' Exhibit 16 to the July 29, 2010 Supplemental*

14

*Special Report (Affidavit of Matthew Jordan) - Court Doc. No. 183-2.*  These correctional officers assert they did not observe Boyd in any acute distress, Boyd did not request they obtain medical treatment for him on this date and, therefore, they did not make any such request.  *Id*.  The medical records likewise demonstrate Boyd received medications for back pain and stiffness.   Dr. Jean Darbouze, a licensed physician board certified in internal medicine, addresses Boyd's allegations as follows:

> Mr. Boyd has complained of chronic back pain since at least 2003. He received a lumbar spine x-ray on August 15, 2006 -- approximately seven months before the time period in question -- which showed that the vertebra in his lumbar spine were well aligned.  There was no evidence of fracture or destructive bone disease.  Thomas J. Payne, III, M.D., a radiologist, interpreted the x-ray as normal.
>
> Mr. Boyd submitted a sick call request on March 22, 2007 for evaluation of chest pain and a penis rash.  He presented to the healthcare unit at 6:45 p.m. with primary complaints of chest pain secondary to heartburn.  It was noted that he ambulated to the healthcare unit with a steady gait, was alert and oriented ..., and that his respirations were even and unlabored.  He was in no acute distress and his skin was warm and dry.  He requested Zantac and a repeat EKG from the nursing staff.  He was appropriately informed that a repeat EKG was not indicated at that time. Mr. Boyd also asked his treating nurse to contact me in order to receive a prescription for Zantac.  He was appropriately instructed to sign up for sick call to be evaluated for the request.  Mr. Boyd refused Maalox which was offered to him for treatment of his heartburn.
>
> The next day, March 23, 2007, Mr. Boyd presented to the healthcare unit at 9:00 a.m. after slipping in a puddle of water while mopping.  He informed his treating nurse that his "back went out" and that his right leg "started numbing."  He was placed in a neck brace pending evaluation. Upon evaluation, Mr. Boyd was noted to be alert and oriented.  He had appropriate capillary refill in the extremities, good pedal pulses, and was able to move his toes secondary to stimulus.  I evaluated Mr. Boyd and determined that he was in no acute distress.  He had complaints of spinal tenderness without associated weakness, numbness or neurological deficit.

15

I ordered Mr. Boyd's neck brace removed and prescribed him Tylenol and Flexeril for pain and stiffness. It was noted that Mr. Boyd ambulated out of the healthcare unit without difficulty under his own power at approximately 9:40 a.m.

At 10:25 a.m., Mr. Boyd was brought back to the healthcare unit for an ADOC body chart. At that time, he stated that he had been injured as a result of being thrown to the ground by ADOC officers and, as a result, had knee and head pain. He was evaluated by the nursing staff. A superficial scrape was noted on the left knee. There was no bleeding associated with the scrape and no other cuts, bruises, or abrasions were identified. He was noted to be in no visible distress. No new medications were ordered at that time and he was instructed to follow up with the healthcare unit as needed.

On March 25, 2007 [based on a March 22, 2007 sick call request regarding chest pain and a genital rash], Mr. Boyd was offered an opportunity to present for sick call evaluation. However, [the attending nurse noted Boyd] refused to come out of his cell [for sick call screening. The nurse, however, did not make any objective observation confirming the inmate's alleged inability to ambulate nor did she note any request by Boyd for treatment of his back at this time. The undisputed medical records likewise establish Boyd did not complete a sick call request regarding his back from March 23, 2007 through March 25, 2007.] On March 26, 2007, Mr. Boyd filled out another sick call request seeking evaluation for back pain which he claimed was caused by sleeping on the floor. He was evaluated the next day, March 27, 2007. On that date it was again noted that he could ambulate with a steady gait. His vital signs were noted to be normal. In addition, he was found to be alert and oriented ... and was breathing without difficulty. He had no tenderness in the back and was referred to me for further evaluation.

Mr. Boyd's medical administration record (MAR) indicates that he received Flexeril and Tylenol multiple times daily from March 23, [2007] through March 29, 2007. As such, he received medication for treatment of his back pain and stiffness during the time period in question.

Based on my review of Mr. Boyd's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were appropriately evaluated and treated from March 23, 2007 through March 26, 2007. Mr. Boyd was seen and evaluated by me and by the nursing staff, and was given appropriate care each time he registered any health complaints.

* * *

16

>At no time have I or any of the nursing staff at Easterling
>Correctional Facility denied Mr. Boyd any needed medical treatment, nor
>have we ever acted with deliberate indifference to any serious medical need
>of Mr. Boyd.  At no time did I retaliate against Mr. Boyd by failing to
>provide him with appropriate medical care for any reason.  To the contrary,
>all of Mr. Boyd's medical complaints and conditions have been addressed
>in an appropriate and timely manner....

*Medical Defendants' Exhibit B to the August 17, 2010 Supplemental Special Report (August 17, 2010 Affidavit of Dr. Jean Darbouze) - Court Doc. No. 189-1* at 3-5.  Dr. Darbouze's synopsis of the treatment provided to Boyd is supported by the certified medical records filed in this case and there is nothing before the court which undermines the validity of these records.  *Medical Defendants' Exhibit A to the August 10, 2010 Supplemental Special Report (Medical Records of Courtney Boyd) - Court Doc. No. 185-1 through Court Doc. No. 185-7.*  These records demonstrate that during the period of time made the basis of this complaint medical personnel, including the individuals named as defendants, examined Boyd, thoroughly evaluated his complaints, monitored his condition, prescribed various medications and provided treatment for his back condition in accordance with their professional judgment.  *Id.*  The medical records further establish that correctional officials routinely provided Boyd access to medical personnel.

Boyd fails to present sufficient evidence to create a dispute of fact with respect to his claim that the defendants acted with deliberate indifference to his medical needs on the days identified in the complaint.  Specifically, the record does not indicate that the defendants had knowledge of specific facts from which an inference could be drawn that

a substantial risk of harm existed to Boyd, the defendants actually drew this inference and thereafter ignored the risk.  Boyd has therefore failed to establish each of the requisite elements of his deliberate indifference claim.  *Carter*, 352 F.3d at 1350.  Consequently, the defendants are entitled to summary judgment on these claims.

## D.  The First Amendment Claim

On March 19, 2010, Boyd wrote a letter to an agent for the Federal Bureau of Investigation in which he complained that on this date he heard someone in the medical unit say "I hate that Black Ass N---er" and arbitrarily attributed the statement to defendant Bush.  *Correctional Defendants' Exhibit 15 to the November 30, 2007 Supplemental Special Report - Court Doc. No. 67-1* at 14.  Defendant Bush determined this letter contained a false statement because she did not make a derogatory comment about Boyd or any other inmate, and she therefore initiated disciplinary action against Boyd for violation of Rule #41, making a false statement or charges.  *Correctional Defendants' Exhibit 15 to the November 30, 2007 Supplemental Special Report - Court Doc. No. 67-1* at 8; *Medical Defendants' Exhibit D to the August 17, 2010 Supplemental Special Report (August 17, 2010 Affidavit of Susanne Bush) - Court Doc. No. 189-3* at 3.

Boyd complains the medical defendants denied him adequate medical treatment in retaliation for his comment about nurse Bush.  These defendants, however, maintain they took no adverse action against Boyd based on the contents of the letter and, instead, evaluated his complaints and provided him treatment in accordance with their medical

judgment.  The affidavits and evidentiary materials submitted by the defendants, including documents contained in Boyd's medical file, support this assertion.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)].  As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987).  Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is

"inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804. Any right protected by the First Amendment is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order. The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish*, 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

However, it is equally well established that "[t]he first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v.*

20

*Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights.  417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)) (internal quotation marks omitted)....  [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory

21

conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate does not retain First Amendment rights which are inconsistent with his status as a prisoner. *Prison Legal News*, 238 F.3d at 1149.  In addition, "[l]egitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights.  417 U.S. at 821." *Adams*, 784 F.2d at 1081.  The speech for which the defendants disciplined Boyd, i.e., making a false statement about a member of the medical staff, is properly restricted by the legitimate penological objective of maintaining institutional security and order and is therefore not protected speech. *Pell*, 417 U.S. at 821.  Nevertheless, even assuming *arguendo* the statement is protected speech, the record is devoid of evidence that the defendants failed to provide medical treatment to Boyd based on the statement he attributed to nurse Bush; rather, the evidence demonstrates medical personnel provided Boyd all necessary and appropriate treatment regard his

22

complaints of back pain.  Consequently, the defendants are entitled to summary judgment on the First Amendment claim.

### E.  Fabricated Disciplinary Claim

Boyd asserts the disciplinary charge lodged against him by defendant Bush for his violation of Rule #41 resulted from a false accusation by this defendant.  He further argues the correctional defendants erroneously relied on this information in determining his guilt for this offense.  The defendants maintain the disciplinary at issue occurred solely due to Boyd's violation of institutional rules governing inmate behavior.  *Medical Defendants' Exhibit D to the August 14, 2007 Special Report (August 14, 2007 Affidavit of Susanne Bush) - Court Doc. No. 33-5* at 2; *Medical Defendants' Exhibit D to the August 17, 2010 Supplemental Special Report (August 17, 2010 Affidavit of Susanne Bush) - Court Doc. No. 189-3* at 3.  It is therefore clear that the defendants do not admit that the information contained in the disciplinary report is either fabricated or false.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court carefully distinguished its holding from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board

must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id*. In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.

*Slocum* controls the disposition of the instant case. The defendants assert the information on which they relied in the disciplinary process is correct and an accurate representation of the plaintiff's disruptive conduct. Moreover, there is no evidence before the court the defendants relied on information they knew to be false during any stage of the disciplinary process. Specifically, there is no admission by any of the defendants that the information utilized in levying the disciplinary against Boyd is false, incorrect or erroneous. The record in this case therefore establishes the defendants did not rely on

*admittedly* false information.  In light of the foregoing, the plaintiff is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants on his false disciplinary claim.

### F.  Equal Protection

Boyd complains nurse Bush denied him medical treatment based on his race.[5] Defendant Bush denies this allegation.  *Medical Defendants' Exhibit D to the August 17, 2010 Supplemental Special Report (August 17, 2010 Affidavit of Susanne Bush) - Court Doc. No. 189-3* at 2-3.  Moreover, the medical records filed herein indicate Boyd received appropriate treatment in accordance with the diagnoses and evaluations of his complaints by various medical professionals, including nurse Bush.  *Medical Defendants' Exhibit A to the August 10, 2010 Supplemental Special Report (Medical Records of Courtney Boyd) - Court Doc. No. 185-1 through Court Doc. No. 185-7.*

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).

---

[5]Boyd identifies himself as black.

25

"[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Boyd bears the burden of producing evidence which would be admissible at trial sufficient to show that nurse Bush failed to provide him treatment and that her action resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.

26

*Boyd v. Liberty Lobby*, 477 U.S. at 252.  Instead, the law is clear that the plaintiff must present significant probative evidence to preclude entry of summary judgment in favor of the defendant(s).  *Id*. at 249.

Boyd fails to identify any similarly situated inmate who received more favorable treatment from nurse Bush or any other health care professional.  Thus, Boyd's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.  In addition, it is clear from the evidentiary materials properly before the court that medical personnel, including nurse Bush, provided treatment to Bush when necessary and indicated.  Consequently, Boyd likewise fails to demonstrate defendant Bush acted with invidious discrimination.  *Id*.  Boyd has therefore not been denied equal protection of the law with respect to the medical treatment provided to him in March of 2007 while confined at the Easterling Correctional Facility and defendant Bush is entitled to summary judgment on this claim.

### G.  The Excessive Force Claims

At this stage of the proceedings, the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to [Boyd].  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)." *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).  Boyd references the following two separate incidents regarding the force used against him by correctional officers during his confinement at Easterling.

1. <u>The March 23, 2007 Incident</u>.  Defendant Lee ordered Boyd to report to the restricted privilege dorm pending investigation of his statement against nurse Bush.  Boyd refused this order prompting defendants Lee and Scott to escort Boyd to the restricted privilege dorm.  Upon arrival at the dorm, Boyd resisted Lee's efforts to place him in the dorm, turned towards this officer in an aggressive manner with his fists clinched and stated "Y'all can't make me go in there."  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  Defendants Williams and Lingo placed Boyd on the floor, handcuffed the inmate and removed him from the floor.  Defendant Logan entered the dorm to assist with Boyd.  Defendants Scott, Logan and Williams began to escort Boyd to the health care unit.  Boyd alleges he passed out and when he regained consciousness it appeared the officers had carried him 10 to 15 feet towards the health care unit, apparently dragging his feet across the ground.[6]  Boyd then regained his balance and continued walking to the health care unit.

Upon arrival at the health care unit, a nurse examined Boyd and observed only a small scrape to his left knee with no bleeding noted.  *Medical Defendants' Exhibit A-4 to the August 14, 2007 Special Report - Court Doc. No. 33-1* at 4.  The nurse found no other injuries during her examination and deemed no treatment necessary.  *Id*.  ("Inmate has scrape noted to [left] knee.  No bleeding noted @ this time.  No injuries noted to head ... at this time -- no other cuts, bruises or abrasions noted @ this time....  No visible distress

---

[6]The defendants deny they dragged Boyd at any time during this incident.

noted....  No [treatment] indicated at this time.").

2.  <u>The June 7, 2007 Incident</u>.  On June 7, 2007, Boyd fell from his bottom bunk causing him to suffer what he described as serious pain in his left side which Boyd advised incapacitated him.  Defendant Bell observed Boyd laying conscious on the floor of his cell and notified defendant Wright of his observations.  Wright questioned Boyd regarding his condition.  Boyd did not respond.  Wright gave Boyd several orders to which he did not respond.  Wright ordered Boyd to raise his hands to be handcuffed but he again failed to respond.  At this time, Boyd raised his head, looked at Wright, smiled and laid his head on the floor.  Inmate Boyd clinched his fists and made his body rigid.  Wright and Bell then removed Boyd from his cell to the lobby for examination by a nurse.

Boyd advised the attending nurse that he had fallen off his bottom bunk onto the floor injuring his left side.  *Correctional Defendants' Exhibit 1 to Exhibit 8 to the September 7, 2007 Special Report - Court Doc. No. 40-8* at 2.  Boyd did not allege any injury related to his removal from the cell.  *Id*.  The nurse noted a small bruise on Boyd's left hip and a bump to the back of his head.  *Id*.  Boyd suffered no "numbness or tingling in extremities [but did complain of] pain as a sharp pain that radiates [down left] leg as he tries to walk."  *Id*.  The nurse prescribed medication to alleviate pain and notified Dr. Darbouze of her observations.  *Id*.  Dr. Darbouze ordered a left chest x-ray.  *Id*.

The defendants adamantly deny Boyd's allegations they utilized excessive force during the above described incidents.  Specifically, the defendants maintain the only force

29

used against Boyd was the amount of force necessary under the circumstances to maintain

discipline and gain control of the inmate or to remove the inmate from his cell for

examination by medical personnel.   The objective evidentiary materials filed herein

support this assertion.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments

and this "proscription ... governs prison officials' use of force against convicted inmates."

*Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1990).

> Under the Eighth Amendment, force is deemed legitimate in a custodial
> setting as long as it is applied "in a good faith effort to maintain or restore
> discipline [and not] maliciously and sadistically to cause harm." *Whitley v.
> Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)
> (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also
> Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156
> (1992). To determine if an application of force was applied maliciously and
> sadistically to cause harm, a variety of factors are considered including: "the
> need for the application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful
> response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321,
> 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From
> consideration of such factors, "inferences may be drawn as to whether the
> use of force could plausibly have been thought necessary, or instead evinced
> such wantonness with respect to the unjustified infliction of harm as is
> tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at
> 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002) (footnote omitted);

*Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002) (The standard applied to an

Eighth Amendment excessive force claim is whether the challenged use of force was

applied "in a good faith effort to maintain or restore discipline" or instead "maliciously and sadistically for the very purpose of causing harm."); *Campbell*, 169 F.3d 1374 ("To establish an Eighth Amendment claim for excessive force, ... Plaintiff must meet [a heightened] intent requirement ... [and] must prove that 'force was applied ... maliciously and sadistically for the very purpose of causing harm.' *Whitley*, 475 U.S. at 320-21, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).... [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary."). In addition, "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" is not enough to support a claim of excessive force in a prison setting. *Campbell*, 169 F.3d at 1375. The law is likewise well settled that:

> [N]ot ... every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U.S., at 27, 106 S.Ct., at 1088....

*Hudson*, 503 U.S. at 9-10, 112 S.Ct. at 1000. "[A] wide range of deference [is afforded] to prison officials action to preserve discipline and security." *Whitley*, 475 U.S. at 321-322, 106 S.Ct. at 1085. A relevant factor in ascertaining whether correctional officers used force in a malicious and sadistic manner is the extent of the injury suffered by the inmate.

*Skrtich*, 280 F.3d at 1302; *Campbell*, 169 F.3d at 1375. "Nevertheless, a court ultimately should decide an excessive force claim 'based on the nature of the force rather than the extent of the injury.' *Wilkins v. Gaddy*, 559 U.S. at ---, ----, 130 S.Ct. 1175, 1177, [175 L.Ed.2d 995] (2010)." *Vicks v. Knight*, 380 Fed.Appx 847, 851 (11th Cir. 2010).

After thorough review of the facts and viewing such in a light most favorable to Boyd, the court concludes Boyd fails to establish the use of excessive force as the record is devoid of evidence that the defendants used force "maliciously and sadistically" for the very purpose of causing harm.  In the first incident, the undisputed facts demonstrate a need for the use of force existed because Boyd disobeyed several orders, confronted the respective defendants in a combative and hostile manner, and posed a threat to his own safety and/or that of the officers.  *Hall v. Santa Rosa Correctional Institution*, 403 Fed.Appx. 479, 482 (11th Cir. 2010) (officers who forced inmate's hands behind his back to apply handcuffs after inmate refused orders and became combative "did not use unconstitutional excessive force [and] no constitutional violation occurred."); *McBride v. Rivers*, 170 Fed. Appx. 648, 657 (11th Cir. 2006) (use of force by officers on recalcitrant and unruly inmate after inmate had been handcuffed and secured, including punches to head, back and left side, and being kneed on left side of face, "although [officers] .... arguably could have used less force after restraining [inmate]," did not constitute the use of force maliciously and sadistically for the very purpose of causing harm.  "The district court, therefore, ... did not err in concluding that no genuine issue existed on whether the

defendants used excessive force in violation of the Eighth Amendment."); *Vicks*, 380 Fed.Appx. At 851-852 (even where conflict in version of events regarding use of force by officers is present, where plaintiff's version of events is contradicted by all relevant evidence, with the exception of his own affidavit, a reasonable fact finder could not believe plaintiff and entry of summary judgment appropriate).

With respect to the second incident, the officers used only the amount of force necessary under the circumstances to remove Boyd from his cell and transport him for examination by a health care professional.  The physical contact about which Boyd complains shows, at best, a "*de minimis* use[] of physical force" which is excluded from "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments" as such contact "is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10; *McCall v. Crosthwait*, 336 Fed.Appx. 871, 873 (11th Cir. 2009) (push of inmate into steel cell door and plexiglass window, which caused bruises to inmate's right elbow and shoulder, constituted *de minimis* use of force not violative of the Constitution).

In addition, the fact each defendant immediately reported the incident to a supervisor and then ensured Boyd received medical treatment within a few minutes of the specific altercation constitutes another reason which supports the finding of a lack of malicious or sadistic conduct.  Also, Boyd does not claim that any of the defendants, in applying force, used threatening or abusive language.  *See Bozeman v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) (explaining that, although mere words are not

33

determinative of bad faith on the part of correctional officers in their use of force, "threatening language as part of the totality of the circumstances can be relevant to what is constitutionally reasonable," and may be relevant in the determination of reasonable inferences which can be drawn regarding the officers' subjective state of mind). Moreover, unlike the inmate plaintiff in *Skrtich*, the defendants did not electrically stun Boyd, repeatedly seek to harm him nor beat him unconscious, and he did not require medical treatment at an off-site hospital. After each incident identified in the instant complaint, Boyd needed only cursory treatment from correctional medical personnel and the treatment provided upon the second incident related solely to Boyd's fall from his bunk. Consequently, it is clear a need for the use of force existed during each incident and the respective amount of force used was reasonable in light of the circumstances presented by Boyd. The court therefore concludes the correctional officers did not act maliciously and sadistically in using force against Boyd during either of the challenged incidents and they are therefore entitled to summary judgment on the excessive force claims.

### H. Cruel and Unusual Punishment

Boyd alleges the removal of his mattress from 6 a.m. until 6 p.m. Monday through Friday during his confinement in disciplinary segregation constituted cruel and unusual punishment. Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "'[T]he Constitution does not mandate comfortable

prisons.' *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

In light of the foregoing, it is clear removal of an inmate's mattress for several hours during daytime does not rise to the level of an Eighth Amendment violation.  Thus, the defendants are entitled to summary judgment on this claim.

### I.  Classification Level

To the extent Boyd challenges the classification level assigned to him by correctional officials while at Easterling, he is entitled to no relief.  An inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Because Boyd has no constitutionally protected interest in the level of his custody classification, correctional officials may assign him to any classification level without implicating the protections of due process.  Summary judgment is therefore due to be granted in favor of the defendants on this claim.

### J.  Confinement at Easterling[7]

Boyd asserts correctional officials failed to transfer him to a less restrictive correctional facility.  *Plaintiff's Amendment to the Complaint - Court Doc. No. 7* at 2.  A convicted prisoner has no constitutionally protected right to confinement in a particular penal facility.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Thus, an inmate may be confined in any correctional facility without implicating the prisoner's constitutional rights.  *Id.*; *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Although the plaintiff's confinement at Easterling may have entailed "more burdensome conditions" than that of confinement in some other facility, Boyd's incarceration at Easterling is "'within the normal limits or range of custody which the conviction has authorized the State to impose.'  *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)."  *Sandin*, 515 U.S. at 478.  Consequently, the failure to transfer Boyd to a more favorable correctional facility does not rise to the level of a constitutional violation and such claim therefore provides no basis for relief in this 42 U.S.C. § 1983 action.

### K.  Negligence

Boyd asserts the actions of the defendants constituted negligence.  The law is well settled that the Constitution is not implicated by negligent acts of an official.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Mandel v. Doe*, 888 F.2d 783,787-788 (11th Cir. 1989)

---

[7]The plaintiff is now incarcerated at Kilby Correctional Facility.

(mere negligence insufficient to establish constitutional violation); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (protections of the Constitution "are just not triggered by lack of due care by prison officials."). Thus, the alleged negligent actions about which the plaintiff complains do not rise to the level of a constitutional violation and provide no basis for relief in this 42 U.S.C. § 1983 action.

## L.  Supplemental Jurisdiction - State Tort Claim

Boyd seeks to proceed on a pendent state law claim of negligence against the defendants. With respect to this claim, the court concludes the state tort claim provides no basis for relief in this cause of action. Review of any pendent state tort claim is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the court deems exercise of such jurisdiction over Boyd's negligence claim inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction. To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers*

*v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.

In view of the resolution of the federal claims presented by Boyd, the court concludes the pendent state claim of negligence is due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982). The court therefore declines to exercise supplemental jurisdiction over the pendent state tort claim presented in this cause of action.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before July 25, 2011**, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties

38

are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of July, 2011.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE